Matter of Gasparro v Hospice of Dutchess County (2018 NY Slip Op 07815)





Matter of Gasparro v Hospice of Dutchess County


2018 NY Slip Op 07815


Decided on November 15, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 15, 2018

526425

[*1]In the Matter of the Claim of MARY ANN GASPARRO, Appellant,
v
HOSPICE OF DUTCHESS COUNTY et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent.

Calendar Date: October 17, 2018

Before: Garry, P.J., McCarthy, Lynch, Aarons and Rumsey, JJ.


Ouimette, Goldstein & Andrews, LLP, Poughkeepsie (Louis M. Dauerer of counsel), for appellant.
Ryan, Roach & Ryan LLP, Kingston (John D. Dunne of counsel), for Hospice of Dutchess County and another, respondents.
Barbara D. Underwood, Attorney General (Steven Segall of counsel), for Workers' Compensation Board, respondent.
Justin S. Teff, Kingston, for N.Y. Injured Workers' Bar Association, amicus curiae.



MEMORANDUM AND ORDER
Garry, P.J.
Appeal from a decision of the Workers' Compensation Board, filed May 24, 2017, which, among other things, ruled that the Medical Treatment Guidelines apply to medical treatment rendered to a nonresident claimant by an out-of-state provider.
In 1995, claimant, a home health aide, sustained work-related injuries to her lower back and buttocks while employed in New York. Her subsequent claim for workers' compensation benefits was established, and she ultimately received a nonschedule permanent partial disability classification for her compensable injuries. In 2005, claimant moved to Nevada. Thereafter, in 2016, the employer's workers' compensation carrier filed several C-8.1 (part B) forms objecting to payment of, among others, July 2016 and September 2016 bills from Christopher Allen Fisher, a pain management specialist in Nevada, who dispensed topical pain relief products to claimant, specifically, LidoPro ointment and Terocin patches. Following a hearing on the carrier's objections dated July 21, 2016 and September 27, 2016, a Workers' Compensation Law Judge resolved the carrier's C-8.1 objections in favor of Fischer, but directed Fischer to, in the future, file narrative reports with the Workers' Compensation Board and the carrier detailing the medical necessity for and causal relationship of the LidoPro ointment and Terocin patches dispensed to [*2]claimant [FN1]. Upon the carrier's administrative appeal, the Board reversed, noting that, in light of its continuing jurisdiction pursuant to Workers' Compensation Law § 123 and consideration of a recent decision from the Court of Appeals (Matter of Kigin v State of N.Y. Workers' Compensation Bd., 24 NY3d 459 [2014]), it had reexamined the question of whether the Medical Treatment Guidelines (hereinafter guidelines) apply to medical treatment received by claimant in another state and, departing from its prior decisions on this issue, concluded that the guidelines do apply to medical treatment received by a claimant in another state [FN2]. Applying the guidelines to the objections before it, the Board found that LidoPro and Terocin were not prescribed in accordance with the guidelines and, thus, resolved the objections in favor of the carrier. Claimant appeals.
We affirm. The Board is entitled to alter a course previously set out in its decisions, provided it sets forth its reasons for doing so (see Matter of Danin v Stop & Shop, 115 AD3d 1077, 1079 [2014]; Matter of Canfora v Goldman Sachs Group, Inc., 110 AD3d 1123, 1124 [2013]; Matter of Williams v Lloyd Gunther El. Serv., Inc., 104 AD3d 1013, 1015 [2013]). Here, we disagree with claimant that the Board impermissibly departed from its earlier decisions, as the Board acknowledged such a departure in its May 2017 decision and articulated its reasons for doing so (see Matter of Danin v Stop & Shop, 115 AD3d at 1079; Matter of Canfora v Goldman Sachs Group, Inc., 110 AD3d at 1124). Moreover, we find that the Board's decision to depart from its prior decisions and apply the guidelines to the out-of-state treatment received by claimant in this case was rational. "The Board has the authority to promulgate medical treatment guidelines defining the nature and scope of necessary treatment" (Matter of Bland v Gellman, Brydges & Schroff, 151 AD3d 1484, 1486-1487 [2017], lv dismissed and denied 30 NY3d 1035 [2017]; see Workers' Compensation Law § 13 [a]; Matter of Kigin v State of N.Y. Workers' Compensation Bd., 24 NY3d at 463). "An agency's construction of its statutes and regulations will be upheld if rational and reasonable" (Matter of Bland v Gellman, Brydges & Schroff, 151 AD3d at 1487; see Matter of Madigan v ARR ELS, 126 AD3d 1262, 1263 [2015]; Matter of Cooke Ctr. for Learning & Dev. v Mills, 19 AD3d 834, 835 [2005], lv dismissed and denied 5 NY3d 846 [2005]).
There is no dispute that claimant, who was injured in New York but has since moved to Nevada, is entitled to continue to receive medical treatment from qualified physicians in her new state and that the employer remains liable for the reasonable value of necessary medical treatment from qualified physicians in her new state (see Matter of Nikolic v Regent Wall St. Hotel, 30 AD3d 885, 886 [2006]; Matter of Bowman v J & J Log & Lbr. Corp., 305 AD2d 888, 889 [2003]; Matter of Ranellucci v New York Cent. R.R. Co., 282 App Div 789, 789-790 [1953], affd 306 NY 896 [1954]). In our view, the plain language of the regulations governing the guidelines do not limit their applicability to such medical treatment provided to claimants in other states, and a "treating medical provider" includes "any physician, podiatrist, chiropractor or psychologist that is providing treatment and care to an injured worker pursuant to the Workers' Compensation Law" without regard to, or limitation of, geographic location (12 NYCRR 324.1 [l] [emphasis added]; see 12 NYCRR 324.1 [d]). Consistent with the regulations, the guidelines also state that "[a]ny medical provider rendering services to a workers' compensation patient must utilize the
. . . [g]uidelines as provided for with respect to all work-related injuries and/or illnesses" (State of New York Workers' Compensation Board Mid and Low Back Injury Medical Treatment Guidelines, at 1 [Sept. 2014]). By applying the guidelines to treatment received in another state, the same medical standards of care — developed to ensure that claimants receive appropriate and [*3]effective medical care as recommended by the medical community identifying best practices (see Matter of Kigin v State of N.Y. Workers' Compensation Bd., 24 NY3d at 467) — will apply equally to medical treatment received by in-state and out-of-state claimants (see Employer: Johnson Controls, 2018 WL 3097739, *2, 2018 Wrk Comp LEXIS 5476, *3-4 [WCB No. 2971 3333, June 13, 2018]; Employer: Essel Te Pendaflex, 2018 WL 2198099, *2, 2018 Wrk Comp LEXIS 4106, *3-5 [WCB No. 2880 0171, May 4, 2018]). Accordingly, in our view, the Board reasonably applied the guidelines to the treatment received by claimant in Nevada (cf. Matter of Bowman v J & J Log & Lbr. Corp., 305 AD2d at 889).
Regarding the Board's application of the guidelines in this matter, claimant contends that the Board erred in finding that the medical treatment received by claimant in Nevada deviated from the guidelines. We disagree. The record reflects that LidoPro is a prescription topical pain relief ointment that includes lidocaine and capsaicin as active ingredients. A Terocin patch, which also requires a prescription, similarly contains lidocaine as an active ingredient. The guidelines for mid and low back injuries provide that, while topical drug delivery may be an acceptable form of treatment in some patients, the optimal duration for the use of capsaicin is one to two weeks, and "[l]ong-term use of capsaicin is not recommended" (State of New York Workers' Compensation Board Mid and Low Back Injury Medical Treatment Guidelines, at 48-49 [Sept. 2014]). As to topical lidocaine, the guidelines state that such treatment "is only indicated when there is a documentation of a diagnosis of neuropathic pain" and is recommended for no more than four weeks "with the need for documentation of functional gains as criteria for additional use" (State of New York Workers' Compensation Board Mid and Low Back Injury Medical Treatment Guidelines, at 49 [Sept. 2014]; see also State of New York Workers' Compensation Board Non-Acute Pain Medical Treatment Guidelines, at 37-38 [Sept. 2014]). Moreover, concomitant use of multiple drugs in the same class is not recommended (see State of New York Workers' Compensation Board Non-Acute Pain Medical Treatment Guidelines, at 29-30, 37-38 [Sept. 2014]). As Fischer prescribed concomitant treatments of LidoPro and Terocin, which claimant conceded are "different delivery methods of the same medications," in excess of the duration recommended by the guidelines without adequately documenting the necessity for these treatments (see Workers' Compensation Law § 13 [a]; State of New York Workers' Compensation Board Mid and Low Back Injury Medical Treatment Guidelines, at 49 [Sept. 2014]), we find that the Board's decision that claimant failed to establish that LidoPro and Terocin were medically necessary and that these treatments were not prescribed in accordance with the guidelines is supported by substantial evidence, and it will not be disturbed (cf. Matter of Bland v Gellman, Brydges & Schroff, 151 AD3d at 1487; see generally Matter of Kigin v State of N.Y. Workers' Compensation Bd., 24 NY3d at 468-469). To the extent that claimant's remaining contentions are properly before us, they have been considered and found to be either academic in light of our decision herein or without merit.
McCarthy, Lynch, Aarons and Rumsey, JJ., concur.
ORDERED that the decision is affirmed, without costs.



Footnotes

Footnote 1: In an April 2016 proposed decision, a Workers' Compensation Law Judge also resolved the carrier's C-8.1 objections dated January 29, February 12 and March 11, 2016 in favor of claimant's medical provider.

Footnote 2: The Board noted that, "[w]hile it is preferable that an out[-]of[-]state provider utilize Board-prescribed forms," a "carrier should not deny a request for [medical] treatment by a medical provider licensed in another state solely because the provider failed to use the proper form."